---

DANIEL D. FISHER, SR.,

       Plaintiff,

    v.

STEVEN PRATT, individually,
and as Captain of Southampton
Volunteer Fire Department,
and as Investigator of New
Jersey State Fire Marshal
Office; and SOUTHAMPTON TWP.
FIRE DEPT.,

       Defendants.

Civil No. 19-273 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

DANIEL D. FISHER, SR.
P.O. BOX 83
PEMBERTON, New Jersey 08068

    *Appearing Pro Se.*

BENJAMIN HENRY ZIEMAN
CAPEHART & SCATCHARD P.A.
8000 MIDLANTIC DRIVE, SUITE 300S
P.O. BOX 5016
MT. LAUREL, NEW JERSEY 08054

BETSY G. RAMOS
CAPEHART & SCATCHARD P.A.
8000 MIDLANTIC DRIVE, SUITE 300S
P.O. BOX 5016
MT. LAUREL, NEW JERSEY 08054

    *Attorneys for Defendants.*

**HILLMAN, District Judge**

This action follows demolition of Daniel D. Fisher, Sr.'s ("Plaintiff") home after a fire resulted in a partial collapse. After emergency personnel determined that Plaintiff's home posed a risk of further collapse and harm to the community, and to fully manage the blaze, Plaintiff's home was demolished in sections so that firefighters could fully extinguish the flames. Plaintiff alleges that in demolishing his home, Southampton Township Fire Department and Steven Pratt (collectively, "Defendants") violated Plaintiff's civil and constitutional rights.

This matter comes before the Court on Defendants' motion for summary judgment (ECF No. 16) and Plaintiff's motion to amend his complaint (ECF No. 13). For the reasons that follow, Defendants' motion for summary judgment will be granted, and Plaintiff's motion will be denied.

## BACKGROUND

The Court takes its facts from Defendants' statement of material facts not in dispute.[1]  Because the Court writes

---

[1] Plaintiff has not adequately responded to Defendants' statement of undisputed fact.  Although acting *pro se*, Plaintiff still has an obligation to abide by the rules of court.  Local Civil Rule 56.1 requires "the opponent of summary judgment [to] furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion[.]"

primarily for the parties involved, it will not recite in full

the unusual procedural history of this action, trusting the

parties know it well.[2]

On December 16, 2016, Plaintiff's home in the Township of

Southampton caught fire. (ECF No. 16-2 ("SOMF") at ¶1). After

trying unsuccessfully to extinguish the fire himself, Plaintiff

dialed 9-1-1 and reported his emergency. See (SOMF at ¶¶15-16).

A short time later, Vincent Fire Company #1 and several other

_____

While Plaintiff submits a statement indicating whether he agrees
or disagrees with Defendants' statements, he does not cite to
evidentiary material in support of those positions. In light of
Plaintiff's pro se status, the Court has endeavored to note such
evidence where it exists. In the end, for the reasons explained
infra, there are no material disputes of fact precluding summary
judgment. The Court also notes that while Plaintiff presents
his complaint as being "verified[,]" a review of the filing
proves it is not. Plaintiff provides no verification,
declaration, or other attestation to the information contained
in the pleading. As such, the Court will not rely upon it as
evidentiary fact in conducting this analysis.

[2] A brief explanation of the relevant procedural history,
however, is warranted. Plaintiff filed a related action
involving nearly identical claims on December 15, 2017 under
docket number 1:17-cv-13248 (the "Prior Action"). Plaintiff
filed an amended complaint in the Prior Action on December 28,
2017. After motion practice, on August 24, 2018, this Court
entered an Order dismissing the Prior Action but granting
Plaintiff leave to amend. Instead of filing an amended
complaint, Plaintiff voluntarily withdrew his complaint and the
Clerk closed the case. Thereafter, Plaintiff filed a Motion for
Reconsideration which was denied for lack of jurisdiction
because the case was voluntarily closed by Plaintiff. The Court
instructed Plaintiff to file an amended complaint in a new
action if he wished to continue to pursue his claims. This is
that action.

local fire companies responded to Plaintiff's call.[3] (SOMF at ¶17). Once on scene, firefighters faced a complex and volatile scene. Due to the construction of Plaintiff's house and various encumbrances, firefighters struggled to access the home and the epicenter of the fire. See (SOMF at ¶20) ("[i]t was 'impossible' for the firemen to access the attic fire from either the inside or the outside, . . . because 'many doors were closed off'"); (SOMF at ¶21) ("inability to access the attic" prevented ventilation "which in turn led several firefighters to sustain burns to their ears"). Similarly, it became clear that the structure was destabilizing and becoming a risk to emergency personnel and others. See (SOMF at ¶¶23-24, 26) (indicating that the floors had become soft and were showing signs of collapse, that a firefighter fell through a portion of the weakened floor, and that hidden pockets of fire were beginning to compromise the integrity of the overall structure).

In light of the circumstances, Vincent Fire Company #1's Chief, Barrington T. Pratt ("Chief Pratt"),[4] ordered all firemen

---

[3] While Southhampton Township Fire Department is identified as a defendant in this action, that entity does not exist. Instead, the Township of Southhampton is serviced by two volunteer fire departments, Vincent Fire Company #1 and Hampton Lakes Fire Company. (SOMF at ¶4). Despite this pleading deficiency, the Court will assess whether Plaintiff's claims may proceed against these more properly identified entities.

[4] Plaintiff has identified Steven Pratt, not Chief Pratt, as a defendant in this action. Steven Pratt was not involved in

out of the structure and determined that additional resources would be necessary to battle the blaze. (SOMF at ¶¶5-6, 23). As Chief Pratt suspected, a short time later, "part of the roof eventually collapsed in the second floor" creating additional concerns regarding the structural integrity of Plaintiff's home. (SOMF at ¶26). This partial collapse created fire pockets concealed under debris, inaccessible to firefighters, further complicating efforts to control the scene. (SOMF at ¶26).

Several hours after the fire began, Burlington County Fire Marshall Robert W. Carr, Jr. arrived on scene. (SOMF at ¶¶8, 42). Examination of the exterior of the home revealed that the roof had partially collapsed and the walls "showed signs of fire, collapse, and fire suppression damage[.]" (SOMF at ¶¶43-45). According to Carr, such damage rendered the property unsafe. (SOMF at ¶¶43-44, 46).

Not long after Carr's assessment, Southhampton's construction official Edward Toussaint arrived as well. (SOMF

---

battling Plaintiff's fire, did not respond to the scene, and according to Defendants was entirely uninvolved in the circumstances underlying this action. (SOMF at ¶5). Plaintiff nonetheless maintains that Steven Pratt communicated with him during the relevant circumstances. As explained in more detail, infra, this is not a material issue of fact precluding summary judgment against the existing defendant Steven Pratt, or putative defendant Chief Pratt. Plaintiff has clearly stated his intention to assert a claim against the firefighter named Pratt who was at the fire. The record establishes that this was Chief Pratt.

at ¶¶7, 27).  Chief Pratt informed Toussaint that the partial

collapse created fire pockets that firefighters could not

access, and that he believed "the safest course of action for

full extinguishment . . . was to bring in an excavator to tear

apart the home and extinguish as areas are removed."  (SOMF at

¶27).  After inspecting the exterior of the home, Toussaint

approved of this strategy.[5]  (SOMF at ¶28).

Pratt and Toussaint explained the situation to Plaintiff

and commissioned several firemen to help Plaintiff retrieve

certain belongings from a limited portion of the home that, for

the moment, remained structurally intact and unaffected by the

fire.  (SOMF at ¶¶33, 35, 37-38).  Plaintiff objected to the

determination that the home needed to be demolished and

requested the home remain intact.  See (SOMF at ¶¶36-37).  Over

Plaintiff's objection, the home was demolished and the fire

extinguished.  (SOMF at ¶¶39-41).

On January 9, 2019, Plaintiff filed his initial complaint

in the present action along with an application to proceed in

forma pauperis (IFP).  While not necessarily clear, Plaintiff's

complaint appears to contain twenty counts.  This Court

---

[5] Toussaint concluded that the "entire structure had been
compromised" and the structure was "unsafe[.]"  (SOMF at ¶31).
Toussaint found the structure to be beyond repair, and further
concluded that the only way to make it safe was to demolish it.
(SOMF at ¶32).

previously categorized Plaintiff's complaint as containing claims arising under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986.  Plaintiff also seeks declaratory relief for alleged violations of the Constitution of the United States and the New Jersey State Constitution.  On February 11, 2019, this Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915 and dismissed all claims brought pursuant to 42 U.S.C. § 1985 and 42 U.S.C. § 1986 against all defendants.  (ECF Nos. 3 and 4).  The Court also dismissed all 42 U.S.C. § 1983 claims against Defendant Pratt in his official capacity.  (ECF No. 9 at 4-5).

On May 15, 2019, Plaintiff moved to amend his complaint for what is effectively a third time.[6]  (ECF No. 13).  On July 10, 2019, Defendants moved for summary judgment.  (ECF No. 16). Plaintiff filed opposition on July 23, 2019.  (ECF No. 18). Defendants filed reply papers on July 30, 2019.  (ECF No. 19). On August 23, 2019, Plaintiff filed what appears to be a sur-reply, without leave of court to do so, (ECF No. 20), which Defendants ask the Court to disregard or strike (ECF No. 21).[7]

---

[6] See footnote two, supra.

[7] Local Civil Rule 7.1(d)(6) provides that "[n]o sur-replies are permitted without permission of the Judge . . . to whom the case is assigned."  Plaintiff did not seek leave before filing his sur-reply.  To that extent, Defendants are correct.

The motions before the Court are fully briefed and ripe for adjudication.

**ANALYSIS**

## I. Subject Matter Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## II. Legal Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing

---

However, pursuant to Local Civil Rule 7.2(b), reply briefs are limited to fifteen (15) pages in length. Defendants' reply brief is overlength by one full page. Defendants have not sought leave to file an overlength brief.

While the Court could disregard or strike both the sur-reply and reply briefs, finding both deficiencies in equipoise, the Court instead opts to consider both parties' submissions in total in deciding the present motions; such gives both parties the benefit of their complete advocacy in this matter.

substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.").

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a

showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

## III. Clarifying Plaintiff's Causes of Action

Plaintiff's complaint contains paragraphs suggesting the presentation of twenty (20) separate counts. Most of these claims are advanced without explanation and merely cite to statutes or constitutional provisions, complicating this Court's review and analysis of them. Having studied the complaint, and drawing all inferences in Plaintiff's favor, the Court determines that Plaintiff advances the following, remaining[8] causes of action: (1) a 42 U.S.C. § 1983 claim against Defendant Pratt in his personal capacity; (2) a claim for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202;[9] (3) claims under

---

[8] Because the Court previously dismissed all 42 U.S.C. § 1985 and 42 U.S.C. § 1986 claims, and all 42 U.S.C. § 1983 claims against Defendant Pratt in his official capacity, the Court will address only those claims that remain pending resolution.

[9] Plaintiff references these statutes – permitting the Court to provide declaratory relief – without explaining why such relief is warranted. Moreover, because the Court finds that summary

the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; and (4) claims under the New Jersey State Constitution.  The Court addresses each in turn.

**IV. Claims Against Defendant Pratt**

Defendants lead by arguing that all claims against Defendant Pratt must be dismissed as he was not personally involved in the events underlying this action.  (ECF No. 16-1 ("Def. Br.") at 9).  Plaintiff's opposition papers suggest that Defendant Pratt and Chief Pratt are one and the same.  <u>See</u> (ECF No. 18 at 9) (asserting that the named defendant is "Steven Pratt (aka Barrington Pratt, aka Steven Barry Pratt)").

The record is clear that Defendant Pratt and Chief Pratt are two different people and Defendant Pratt was not involved in the circumstances underlying this action.  It is equally clear that Plaintiff intends to bring claims against the person named Pratt who was on the scene and in a position of authority – <u>i.e.</u>, Chief Pratt.

Accordingly, the Court will dismiss any claims against a Steven Pratt who was not present at the scene of the fire: a) because Plaintiff does not seek to hold him liable and b) Plaintiff has asserted no facts on which he could be held

---

judgment is appropriate, the Court concludes no declaratory relief is required.  As such, the Court will not discuss these statutes further.

liable.  Principles of tort liability inform our interpretation of § 1983 as a statute as it is one, essentially, "sounding in tort."  Howell v. Cataldi, 464 F.2d 272, 278 n.10 (3d Cir. 1972); see Carey v. Piphus, 435 U.S. 247, 253, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) (describing § 1983 as a "species of tort liability").  A fundamental principle of tort liability is that a tortfeasor's "liability . . . will only result from his own neglect . . . ."  Dunlop v. Munroe, 11 U.S. 242, 269, 3 L. Ed. 329 (1812).  Therefore, as a result of that principle, "[a]n essential element of [a] plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered."  Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289-90 (3d Cir. 2018) (citation omitted).

    In the § 1983 context, these principles require a "showing of direct responsibility" by the named defendant and reject any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights." Rizzo v. Goode, 423 U.S. 362, 376-77, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).  Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 173 L. Ed. 2d 868

(2009). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 677.

Since the undisputed facts show that Defendant Steven Pratt was not involved in the fire response underlying Plaintiff's complaint, all claims against him must be dismissed, and summary judgment granted in his favor.

Since it is clear that Plaintiff seeks to impose liability on the Pratt who was present - Chief Pratt - the issue arises if Plaintiff should be granted leave to amend to properly name the individual he intended to sue. For reasons that follow, that would be futile.

To prevail on a § 1983 claim, Plaintiff must prove "that some person has deprived him of a federal right" and that "the person who has deprived him of that right acted under color of state or territorial law." Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980); see Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995) ("A prima facie case under § 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."). Because the Court finds, for the reasons set forth, infra, that none of Plaintiff's federal rights were violated, liability cannot stand against Chief Pratt.

Therefore, Plaintiff's proposed amendment, even if corrected to substitute the correct party and name Chief Pratt, would fail as futile.

**V. Constitutional Claims**

Plaintiff's complaint purports to advance claims under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and Article 1, Paragraph 20 of the New Jersey State Constitution. Plaintiff identifies these claims as arising out of the demolition of his home. These claims, therefore, appear best characterized as "takings" claims and "due process" claims. The Court addresses each in turn.

a. Fifth Amendment, Fourteenth Amendment, & New Jersey Constitutional Claims

"Both article I, paragraph 20 of the New Jersey Constitution and the [F]ifth and [F]ourteenth [A]mendments to the United States Constitution prohibit the government from taking property without paying just compensation." In re 106 N. Walnut, LLC, 447 F. App'x 305, 309 (3d Cir. 2011) (quoting Littman v. Gimello, 557 A.2d 314, 317–18 (N.J. 1989)). "The protections afforded under both constitutions are coextensive." Id. (quoting Littman, 557 A.2d at 318). While "the typical taking occurs when the government acts to condemn property in the exercise of its power of eminent domain, the entire doctrine of inverse condemnation is predicated on the proposition that a

14

taking may occur without such formal proceedings." Id. (quoting

First English Evangelical Lutheran Church v. County of Los

Angeles, 482 U.S. 304, 316, 107 S. Ct. 2378, 96 L. Ed. 2d 250

(1987)). "The term 'inverse condemnation' is essentially a

short-hand description of the manner in which a landowner

recovers just compensation for a taking of his property when

condemnation proceedings have not been instituted.'" Id.

(quoting Peduto v. City of North Wildwood, 878 F.2d 725, 728 n.

4 (3d Cir. 1989)). "A property owner is only entitled to

recover, however, if the government action 'deprived [him] of

all or substantially all of the beneficial use' of the

property." Id. (quoting Pinkowski v. Twp. of Montclair, 691

A.2d 837, 845 (N.J. 1997)).

"The Fifth Amendment 'is designed not to limit the

governmental interference with property rights per se, but

rather to secure compensation in the event of [a taking].'" Id.

at 309 (quoting First English, 482 U.S. at 315). "Accordingly,

[a] municipality may, in the exercise of its police power,

without compensation destroy a building or structure that is a

menace to the public safety or welfare, or require the owner to

demolish the dangerous piece of property." Id. (internal

quotation marks and citations omitted). Where property is

demolished on that basis, an inverse condemnation claim cannot

stand. Id.

Not every impairment in property value caused by government action constitutes a taking.  See Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 131, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978).  "[E]ven a substantial reduction of the attractiveness of the property to potential purchasers" generally "does not entitle the owner to compensation under the Fifth Amendment." Kirby Forest Indus., Inc. v. United States, 467 U.S. 1, 15, 104 S. Ct. 2187, 81 L. Ed. 2d 1 (1984).  Likewise, "diminution in property value, standing alone, can[not] establish a []taking[.]"  Penn Cent. Transp. Co., 438 U.S. at 131.

Munoz v. City of Union City, 481 F. App'x 754 (3d Cir. 2012) presents an analogous set of facts to those presented here.  In 2006, a fire started at a building in Union City, New Jersey owned by the plaintiff, Munoz.  Id. at 755.  After fighting the blaze for some time, emergency personnel were evacuated from the structure due to the potential for collapse. Id.  Once the fire was reasonably under control, Union City's construction official assessed the damage and believed the structural integrity of the building had been severely compromised.  The official noted the building had already begun to collapse and that there was a substantial risk of total collapse.  Id. at 756.  The construction official further determined that the building was structurally unsafe and needed

16

to be immediately demolished.  Id.  The building was demolished shortly thereafter.

The plaintiff alleged he did not receive adequate notice prior to demolition.  Id.  As the Third Circuit explained, the essence of the plaintiff's claims were "his Building did not require demolition and, in any event, Appellees failed to follow required protocol before razing the structure."  Id.  The Third Circuit explained that:

> "The Takings Clause of the Fifth Amendment prohibits the federal government from taking private property for public use without providing just compensation." Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 370 (3d Cir. 2012) (citing U.S. Const. amend. V).  This applies with equal force through the Fourteenth Amendment where the state is the government actor.  Id.
>
> Munoz argues that the demolition of the Building eviscerated the property's intended purpose of providing rental income.  But the Takings Clause asks not whether the plaintiff's most profitable use of the property has been destroyed.  A Takings Clause claim cannot lie where the plaintiff was not deprived of all beneficial uses of his property.  See Andrus v. Allard, 444 U.S. 51, 65-66, 100 S. Ct. 318, 62 L. Ed. 2d 210 (1979).  Munoz concedes that he retains a possessory interest in the property.  Indeed, Munoz is still entitled to put the property to any number of beneficial uses.  The record reflects that Munoz simply lacks sufficient funds to do so, at present. Even if Martinetti was without authority to order the demolition, Munoz's continuing possessory interest in the property prevents him from establishing a Takings Clause violation.

Id. at 759.

In this case, like in <u>Munoz</u>, Plaintiff has not alleged a total deprivation of property.  Instead, Plaintiff continues to retain a possessory interest in his land.  As guided by <u>Munoz</u>, even if demolition occurred without order, Plaintiff's "continuing possessory interest in the property prevents him from establishing a Takings Clause violation." <u>Id.</u>  As such, this Court must grant summary judgment in Defendants' favor on this claim.

   b. <u>Fourth Amendment Claim</u>

To the extent Plaintiff advances a Fourth Amendment claim relating to the search or seizure of his property, that claim also fails.[10]

"The Fourth Amendment, made applicable to the States by the Fourteenth, <u>Ker v. California</u>, 374 U.S. 23, 30, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963), provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .'" <u>Soldal v. Cook County, Ill.</u>, 506 U.S. 56, 61, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992).  A seizure of property occurs when "there is some meaningful

---

[10] To the extent Plaintiff's complaint can be read to allege an unlawful search, the Supreme Court has explicitly held that "an entry to fight a fire requires no warrant" <u>Mich. v. Tyler</u>, 436 U.S. 499, 511, 98 S. Ct. 1942, 1951, 56 L. Ed. 2d 486, 500 (1978).  Because the facts make clear that any entry was effectuated to fight an ongoing fire, such a claim must fail.

interference with an individual's possessory interests in that property."  Id. (quoting United States v. Jacobsen, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 104 S. Ct. 1652 (1984)).  The Fourth Amendment's protections apply in the civil as well as the criminal context.  Id. at 67.

Demolition of a partially collapsed structure located on Plaintiff's property constitutes a seizure within the meaning of the Fourth Amendment.  Gariffo Real Estate Holdings Co. v. City of Philadelphia, No. 05-6153, 2007 U.S. Dist. LEXIS 35071, *12 (E.D. Pa. May 11, 2007).  "However, merely because the structure was seized, does not mean that the . . . action violated the Fourth Amendment."  Id. at *13 (citing Soldal, 506 U.S. at 62) ("Whether the [Fourth] Amendment was in fact violated is, of course, a different question that requires determining if the seizure was reasonable.").  To determine whether the action violates the Fourth Amendment, the Court must analyze the reasonableness of the action and balance the public and private interests at stake.  See Id. at *14.

"While searches and seizures must generally be undertaken by state officials only after obtaining a search warrant, the Supreme Court has recognized a number of situations in which a warrantless search may be lawful.  In each of these situations the Supreme Court found exigent circumstances rendering imperative official action without first obtaining a warrant."

Steigler v. Anderson, 496 F.2d 793, 795 (3d Cir. 1974), cert. denied, 419 U.S. 1002, 95 S. Ct. 320, 42 L. Ed. 2d 277 (1974). In the Fourth Amendment context, the Supreme Court has found that an active fire in a structure creates an exigent or emergent circumstance requiring immediate attention and justifying warrantless action. See Mich. v. Clifford, 464 U.S. 287, 293, 104 S. Ct. 641, 646, 78 L. Ed. 2d 477, 483 (1984) ("A burning building of course creates an exigency that justifies a warrantless entry by fire officials to fight the blaze.").

There is no doubt that Plaintiff has suffered the devastating loss of his home and all the attendant property loss and mental anguish that surely arises from such a catastrophic event. But under the facts presented, the Court finds the township's and Defendants' actions reasonable in furtherance of the public interest. The facts establish that: (1) the township and its professionals, including Defendants, determined that Plaintiff's home presented an immediate danger of collapse, and in fact, had already partially collapsed; and (2) fire officials determined that, in order to properly and fully extinguish the blaze, they had to remove portions of the home in order to discover and manage hidden flames trapped between portions of the home that had already collapsed.

The government has a strong interest in ensuring that structures do not pose a threat to the safety of the general

public.  See Camara v. Municipal Court of San Francisco, 387

U.S. 523, 537, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967) ("[T]he

public interest demands that all dangerous conditions be

prevented or abated.").  New Jersey has long echoed that

sentiment.  New Jersey has enacted legislation delegating

authority to do so to its fire chiefs to ensure safe conditions

are restored.  See N.J. Stat. § 40A:14-54.1 ("The chief or other

superior officer of any . . . fire company . . . with the duty

of supervising or directing operations at the scene of any fire

shall be the sole authority within fire lines established by

said fire chief or other superior fire officer . . . at the

scene of such fire with respect to all firefighting operations

relating to the protection of lives and property endangered by

such fire, and within said fire lines such authority shall

supersede that of any municipal police authority.").

This authority expressly includes the power to order

demolition of a home to contain a fire, even without providing

Plaintiff with notice before doing so.  See Crystal Ice-

Bridgeton, LLC v. City of Bridgeton, 54 A.3d 848, 853 (N.J.

Super. Ct. App. Div. 2012) ("We are not dealing with a situation

where a construction official decided independently, without the

involvement of a fire chief, to demolish a fire-damaged

building.  In such a situation, the requirements in N.J.S.A.

40:48-2.5(f)(2) and N.J.A.C. 5:23-2.32(b)(2) potentially would

be applicable. Here, however, . . . the Chief agreed that portions of the building needed to be demolished. The Chief acquiesced in the demolition order while the fire had not yet been declared out and while firefighters were still on the scene. There is no evidence in the record that the Chief had relinquished his statutory authority under N.J.S.A. 40A:14-54.1 when the decision to demolish was made. . . . Thus, we agree with the motion judge that the Chief was not required to provide twenty-four hours' notice to plaintiff and participate in a hearing prior to authorizing Gates, in consultation with Mixner, to demolish part of the building.").

The relevant facts of Crystal Ice-Bridgeton are strikingly similar to those presented here. Chief Pratt, in an effort to battle an on-going fire, consulted with construction officials in determining that emergent demolition was necessary. When acting under the emergent circumstance presented, in which it was determined that an immediate collapse risk was present and that continued fire risk remained, Defendants acted appropriately in demolishing Plaintiff's home without a warrant and without notice.

Plaintiff has not cited any fact contradicting the veracity of the description of the event and discussions leading to the demolition decision, and this Court finds no need to second-guess the emergent decision made by the fire chief in attempting

to bring the fire under control.  The record evidence demonstrates Defendants exercised the authority granted to them and acted in a reasonable manner under difficult circumstances. The Court will therefore grant summary judgment on any Fourth Amendment claim raised by Plaintiff.

      c. <u>Procedural Due Process Claims</u>

Plaintiff cites generally to the Due Process Clause and the Fourteenth Amendment in support of his claims.  While the tenor of Plaintiff's due process claim is not entirely clear, the Court interprets Plaintiff's complaint as suggesting violations for failing to provide him with a due process hearing before razing his home.

It is clear from the record that no pre-demolition due process hearing occurred.  While a due process hearing ordinarily should occur before an individual is deprived of his property, "in special circumstances, a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'"  <u>Munoz v. City of Union City</u>, 481 F. App'x at 758 (quoting <u>Elsmere Park Club, L.P. v. Town of Elsmere</u>, 542 F.3d 412, 417 (3d Cir. 2008)).  "Where there is 'the necessity of quick action by the State,' or where 'providing any meaningful pre[-]deprivation process' would be impractical, the Government

is relieved of the usual obligation to provide a pre[-]
deprivation hearing." Id. (quoting Elsmere Park Club, L.P., 542
F.3d at 417). As the Third Circuit recognized, New Jersey law
contemplates such an emergency situation. Id. (quoting N.J.
Admin. Code § 5:23-2.32(b)(2)); N.J. Stat. § 40A:14-54.1.

This Court has already determined that the demolition
decision was made in response to a pending fire emergency and at
the direction of the fire chief commanding the scene, in
consultation with other emergency personnel and construction
officials. Based on their professional expertise and judgment,
those in command determined that the fire had significantly
compromised the structural integrity of the home and that such
conditions required immediate demolition for continued fire
suppression efforts and safety. Those individuals "acted based
on 'the necessity of quick action[,]' which obviated the need
for a pre-deprivation hearing." Id. (citations omitted). In
this case, Plaintiff has not presented evidence contradicting
the first-responders' determination that emergency demolition
was required to prevent further harm; nor does this Court have
any reason to doubt such a conclusion. The record presents
ample evidence of partial structural collapse and instability.
On this record, the Court finds no reason to second-guess that
determination.

Next, the Court must assess whether post-deprivation due process rights were available.  Meekins v. Graterford, 745 Fed. App'x. 443, 444 (3d Cir. 2018) (citing Hudson v. Palmer, 468 U.S. 517, 533, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)) ("Neither the negligent nor even the unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy.").  The availability of a remedy under state tort law or state administrative law is sufficient.  Id. Plaintiff had adequate post-deprivation due process options available to him.

Plaintiff could have, and partially did, pursue a tort action against certain involved parties.  In this case, Plaintiff filed a tort claims notice but never followed up with a lawsuit.  (SOMF at ¶47).  A governmental entity "cannot be held to have violated due process requirements when it has made procedural protections available and the plaintiff has simply refused to avail himself of them."[11]  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (quoting Dusanek v. Hannon, 677 F.2d

---

[11] To the extent New Jersey's Administrative Code applied, it provides for a process through which to appeal an official determination that demolition is warranted.  See N.J. Admin. Code § 5:23-2.32(b)(6).  Plaintiff did not pursue such relief.

538, 543 (7th Cir. 1982)).  For all of those reasons,

Plaintiff's due process claims must fail.[12]

    d. <u>Equal Protection Claim</u>

The Fourteenth Amendment's Equal Protection Clause provides

that no State shall "deny to any person within its jurisdiction

the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

To prevail on an equal protection claim, a plaintiff "must

present evidence that s/he has been treated differently from

persons who are similarly situated."  <u>Renchenski v. Williams</u>,

622 F.3d 315, 337 (3d Cir. 2010) (quoting <u>Williams v. Morton</u>,

343 F.3d 212, 221 (3d Cir. 2003)).  An equal protection claim

can in some circumstances be sustained if the plaintiff "claims

that she has been irrationally singled out as a so-called 'class

of one.'"  <u>Engquist v. Or. Dep't of Agric.</u>, 553 U.S. 591, 601,

128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).  "Where a litigant

---

[12] Defendants read Plaintiff's complaint as possibly containing a
substantive due process argument.  For purposes of completeness,
the Court recognizes that any such substantive due process claim
would be legally deficient.  In <u>Albright v. Oliver</u>, 510 U.S.
266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), the United
States Supreme Court held that "where a particular Amendment
provides an explicit textual source of constitutional protection
against a particular sort of government behavior, that
Amendment, not the more generalized notion of 'substantive due
process,' must be the guide for analyzing these claims."  The
seizure or taking of property implicates the Fourth Amendment
and the Fifth Amendment.  <u>United States v. James Daniel Good
Real Prop.</u>, 510 U.S. 43, 50, 114 S. Ct. 492, 126 L. Ed. 2d 490
(1993); <u>Soldal</u>, 506 U.S. at 70.  As such, to the extent
Plaintiff does advance a substantive due process claim, it must
yield to the Fourth and Fifth Amendment analyses.

asserts a so-called 'class of one' Equal Protection challenge,
alleging that the litigant itself, and not a particular group,
was the subject of discriminatory treatment . . . , we have
required the litigant to allege 'that she has been intentionally
treated differently from others similarly situated and that
there is no rational basis for the difference in treatment.'"
PG Publ. Co. v. Aichele, 705 F.3d 91, 114 (3d Cir. 2013)
(quoting Marcavage v. Nat'l Park Serv., 666 F.3d 856, 860 (3d
Cir. 2012)).  People are "similarly situated" for equal
protection purposes when they are alike "in all relevant
aspects."  Joey's Auto Repair & Body Shop v. Fayette Cty., 785
Fed. Appx. 46, 49 (3d Cir. 2019) (citations omitted).

In this case, Plaintiff has not alleged he was treated
differently than other, similarly situated individuals.  While
Plaintiff suggests that the owner of another property damaged by
fire received different treatment, the property referenced by
Plaintiff is located in Marlton, and not within Southhampton.
The Court finds that simply being a homeowner in New Jersey does
not constitute similarity in "all relevant aspects" for purposes
of this case.  As such, Defendants are entitled to summary
judgment.

**VI.  Plaintiff's Motion to Amend**

Federal Rule of Civil Procedure 15(a)(2), which applies in the current situation, provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  Id.  "[A] refusal of a motion for leave to amend must be justified.  Permissible justifications include: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment."  Riley v. Taylor, 62 F.3d 86, 90 (3d Cir. 1995) (citation omitted).

Two points require mention.  First, Plaintiff effectively seeks to file a third amended complaint.  As expressed in footnote two, supra, the current complaint before the Court is the third Plaintiff has filed based upon the claims at issue, having filed the Prior Action, and then this present, operative complaint.  Such is indicative of "repeated failures to correct deficiencies with previous amendments[.]"  See Id.

Second, Plaintiff's proposed amendment adds nothing materially new to the present complaint.  In fact, a comparison of the proposed amended complaint with the present one reveals almost no substantive differences.  Because the Court finds summary judgment must be granted on this complaint, so too would

it be necessary on the proposed amended complaint. Finding that Plaintiff's proposed amendment mirrors the pleading this Court finds cannot legally survive, permitting Plaintiff to amend would be an exercise in futility. As such, the Court will deny Plaintiff's motion.

## CONCLUSION

For the reasons expressed herein, Defendants' motion for summary judgment (ECF No. 16) will be granted in its entirety and Plaintiff's motion to amend (ECF No. 13) will be denied. Such resolves all claims in this action.

An appropriate Order will be entered.


Date:  February 14, 2020                     s/ Noel L. Hillman
At Camden, New Jersey                     NOEL L. HILLMAN, U.S.D.J.